14-1481-cv
*Nzegwu v. Secret Service Agent Eric Friedman*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of April, two thousand fifteen.

PRESENT:     PIERRE N. LEVAL,
             DEBRA ANN LIVINGSTON,
                          *Circuit Judges*,
             RICHARD K. EATON,[*]
                          *Judge.*

_____

ANTHONY NZEGWU,

     *Plaintiff-Appellant*,

     v.                                                   No. 14-1481-cv

SECRET SERVICE AGENT ERIC FRIEDMAN, in his official capacity and individually, CITY OF NEW YORK, DETECTIVE JOHN JACKSON,

     *Defendants-Appellees,*

UNITED STATES OF AMERICA, UNITED STATES SECRET SERVICE, POLICE OFFICER JOHN DOES, 1 THROUGH 10 employed by the NEW YORK CITY POLICE DEPARTMENT, whose names and badge numbers are unknown, in their individual and official capacities, NEW YORK CITY POLICE DEPARTMENT,

     *Defendants.[†]*

---

[*] The Honorable Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

1

FOR APPELLANT:                    WILLIAM W. COWLES, Samuel O. Maduegbuna,
                                  Maduegbuna Cooper LLP, New York, NY.

FOR APPELLEE SECRET              JAMES R. CHO, Varuni Nelson, Assistant United States
SERVICE AGENT ERIC              Attorneys, *for* Loretta E. Lynch, United States Attorney for
FRIEDMAN:                        the Eastern District of New York, Brooklyn, NY.

FOR MUNICIPAL APPELLEES          JULIE STEINER, *of counsel, for* Zachary W. Carter,
CITY OF NEW YORK AND            Corporation Counsel of the City of New York, New York,
DETECTIVE JOHN JACKSON:          NY.

Appeal from the United States District Court for the Eastern District of New York (Amon, *C.J.*). **UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-Appellant Anthony Nzegwu ("Nzegwu") appeals from a judgment of the district court granting summary judgment on qualified immunity grounds to Defendants-Appellees Secret Service Agent Eric Friedman ("Agent Friedman") and New York City Police Department Detective John Jackson ("Detective Jackson") (collectively, "Defendants") on Nzegwu's false arrest, malicious prosecution, and excessive detention claims under 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and New York law. We review orders granting summary judgment *de novo*, resolving all factual ambiguities and drawing all reasonable factual inferences in favor of the non-moving party. *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003). Summary judgment is appropriate only if the moving party can show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

---

[†] The Clerk of Court is respectfully requested to amend the caption as above.

## I. False Arrest

Nzegwu's primary claim against Agent Friedman and Detective Jackson is a false arrest claim. Claims for false arrest, whether brought under § 1983, pursuant to *Bivens*, or under state law, are analyzed pursuant to the same standards as the applicable state law's false arrest tort. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Under New York law, "to prevail on a claim of false arrest a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Id.* at 134-35 (internal quotation marks omitted). If an officer has probable cause to arrest, the confinement is privileged. *Id.* at 135.

Defendants need not have had actual probable cause to arrest Nzegwu, however, in order to prevail. To support a qualified immunity defense, "the defending officer need only show 'arguable' probable cause." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause is assessed as of the time of arrest. *See Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007). The evidence in favor of arguable probable cause must be weighed in its totality, such that even if one piece of evidence fails to establish it, arguable probable cause may nonetheless exist based on the combined import of all the evidence available to the defendant at the time. *See Stansbury v. Wertman*, 721 F.3d 84, 92-95 (2d Cir. 2013). Finally, under the collective knowledge doctrine, because Agent Friedman communicated his knowledge of the case to Detective Jackson, Detective Jackson will

be held to have had arguable probable cause to arrest if Agent Friedman did; the analysis for both Defendants is thus the same. *See United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001).[1]

The district court in this case found that Defendants had at least arguable probable cause to arrest Nzegwu. This determination was based principally on three pieces of evidence: (1) the identification of Nzegwu by Alves Griffiths, the superintendent of the building in which Nzegwu resided; (2) Nzegwu's proximity to the wireless signals used to commit the fraud; and (3) the officers' assessment that Nzegwu looked sufficiently like the person shown in the ATM photographs to give them probable cause, when considered in conjunction with the other evidence, to believe they were one and the same person (especially given the absence of any exculpatory evidence known to them at the time). We agree with the district court's conclusion. Griffiths was a disinterested bystander who could reasonably be expected to be familiar with Nzegwu's appearance, since he worked in Nzegwu's building. *See Caldarola*, 298 F.3d at 163 (holding that information provided by "an identified bystander with no apparent motive to falsify" has "a peculiar likelihood of accuracy" (internal quotation marks omitted)). In addition, Agent Friedman and his partner, Agent Boulden, both saw Nzegwu and found his appearance similar to the man shown in the ATM photographs. An officer's determination that a suspect resembles an image from surveillance video can contribute to a determination of probable cause. *Stansbury*, 721 F.3d at 90. And the officers' determination of similarity in this case was likely more reliable than many identifications based on surveillance video, because the ATM photographs captured the suspect's face straight-on and up-close. It was thus reasonable for Defendants to rely on their own observation of Nzegwu as the suspect in arriving at probable cause. Furthermore, based on a

---

[1] In addition, the state of mind of the arresting officer—that is, his subjective reason for believing there to be probable cause to arrest—is irrelevant to the probable cause determination, even if the officer's subjective reason is foolish or based on improper factors. *See Zellner*, 494 F.3d at 369. For this reason, Nzegwu's allegations that Defendants arrested him, at least in part, because of his national origin and race, are irrelevant to the legal inquiry: they go to the officers' subjective reason for arresting him, not to the facts before Defendants at the time of his arrest.

4

photograph of Nzegwu taken at his deposition, which we can compare to the ATM photographs, we cannot say that the officers' conclusion of the similarity of appearance was unreasonable. It was also reasonable for Defendants to consider Nzegwu's proximity to the unsecured wireless signals used to commit the fraud. Although a person need not live in the vicinity of a signal in order to "piggyback" off of it, the fact that wireless signals from the same location had been used repeatedly in the commission of the fraud suggested that the fraud was committed by a person with a reason to be in the vicinity of these particular signals.

In assessing whether a reasonable officer would have determined that there was probable cause to make an arrest, a court must consider the officer's obligation to take into account exculpatory as well as inculpatory evidence. *See Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012). In this case, however, as the district court correctly concluded, there was no such evidence prior to Nzegwu's arrest. Nzegwu's protestations of innocence were not "plainly exculpatory." *See Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."). The district court concluded that, "[v]iewing all the exculpatory and inculpatory evidence together, . . . arguable probable cause existed." Special App. 19-20. The superintendent of the building identified Nzegwu as the person in the ATM photographs, and the fraudulent online transactions originated from the vicinity of Nzegwu's apartment. Two agents found Nzegwu's resemblance to the photographs sufficient to make probable, when considered in light of the other evidence, that he was the person shown in the ATM photographs. We agree that, in the totality of the circumstances, arguable probable cause existed for Nzegwu's arrest. Even if another officer might have disagreed, it was not unreasonable for Defendants to conclude that the circumstances had established probable cause to arrest Nzegwu, and that is all that is necessary to establish a qualified immunity defense in this

case. The district court thus properly granted summary judgment to Defendants on Nzegwu's false arrest claim on qualified immunity grounds.

## II.    Malicious Prosecution

Nzegwu also brought claims against Agent Friedman and Detective Jackson for malicious prosecution. A claim for malicious prosecution requires proof (1) that the defendant initiated or continued a criminal proceeding against the plaintiff, (2) that the proceeding terminated in the plaintiff's favor, (3) that there was no probable cause for the proceeding, and (4) that it was motivated by actual malice on the defendant's part. *Jocks*, 316 F.3d at 136. Even where probable cause existed for initiating a prosecution, a claim "can rest on a prosecution that is continued notwithstanding the discovery of information that exculpates the defendant." *Kinzer v. Jackson*, 316 F.3d 139, 143-44 (2d Cir. 2003). "In order for probable cause to dissipate," allowing a malicious prosecution claim to go forward despite the existence of probable cause for the plaintiff's arrest, "the groundless nature of the charge must be made apparent by the discovery of some intervening fact." *Id.*

Nzegwu argues that the eventual discovery that the computer found in his apartment could not have been used to conduct the online fraud vitiated the justification for continuing the prosecution. Even if that were correct, it would not justify his claim against Defendants. At the point when this fact was discovered, the decision whether to continue the prosecution lay not with Agent Friedman and Detective Jackson, but with the Queens County District Attorney. While the Defendants could nevertheless be liable if they withheld pertinent information from the prosecutor, or misrepresented it, *Williams v. City of New York*, 981 N.Y.S.2d 114, 117 (App. Div. 2014), there is no evidence of any such thing. Once Nzegwu was arraigned, and as long as Agent Friedman did not act beyond the prosecutor's control, Agent Friedman had no power to "continue the

6

prosecution," and thus cannot be held liable for malicious prosecution. The same analysis applies to Detective Jackson. Summary judgment was thus properly granted as to both.

III.    Excessive Detention

Nzegwu also brought an excessive detention claim specifically against Agent Friedman. To prevail on such a claim, a plaintiff must demonstrate "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007). Nzegwu failed to point to any facts in the record suggesting that Agent Friedman "suppressed" or "mishandled" any evidence in this case. Without proof of suppression or mishandling of evidence, we need not even reach the question whether Agent Friedman's behavior "shocks the conscience" or whether the evidence was exculpatory or not. There is no allegation in this case that evidence was tampered with, lost, tainted, or concealed, and no allegation supported by record evidence that any evidence was withheld by Friedman from the prosecutor. Summary judgment was thus appropriately granted as to Nzegwu's excessive detention claim.

We have considered all of the remaining arguments raised by Plaintiff-Appellant and find them to be without merit. For the reasons stated above, we **AFFIRM** the District Court's April 1, 2014 judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7